Jeanty v. Birouette, Case No. 24-2447, and he is... Good afternoon, Mr. Jeanty. Good afternoon, Your Honors. Good afternoon, Ms. Lerner. I'd first like to thank the court. So you have, you've reserved one minute for rebuttal. You've got four minutes at the beginning, and then we'll hear from Ms. Lerner, and then we'll hear from you on rebuttal. But if at any time you can't hear us, then just motion, and I'll try to make sure to notice that. Okay? Yes, Your Honor. Can you hear me? Yep. Yep. So please proceed. Thank you. Thank you for the opportunity to argue remotely. Your Honor, I first want to start with, the district judge listed three laws that it applied. First, that probable cause is determined in the false arrest context, with the facts known to the officer at the time of arrest and immediately before. And then in his decision, it also stated that qualified immunity in false arrest can apply if it's objectively reasonable for officers to believe probable cause existed, or officers with reasonable competence could disagree whether probable cause test was met. Lastly, the district court also stated that the laws grant qualified immunity to all law enforcement officers, except the plainly incompetent or those who normally violate the law. On September 19th, 2018, the police responded to a call. As a result of that response, there was a report filed dated September 19th, 2018. In that report, it was a reference to a previous July 3rd report. It's my position that the complainant provided the officer no facts regarding that July report, other than that it existed and that it involved what she determined was criminal mischief. The actual domestic incident report, he did not have in his possession, nor is there any evidence that she showed him the copy that she would have had. And again, there's no testimony from Ms. Sanders of what information she communicated to him. And the defendant could not articulate at his deposition what specific facts she provided him. And I would like to note that there was a subpoena to depose Ms. Sanders, which the court denied during the discovery process. So, the only document that's relevant, in my belief, is the September 19th, 2018, domestic incident report. And on A-096, she outlines what her complaint is. It's my position that the facts she lists in that part of the complaint, none of it amounts to a crime. And that's supported by the decision that the officer himself made. But the arrest was based on the July conduct, right? Not on the September conduct? Yes, Your Honor. Okay. And again, and again, my argument is the only fact he knew about the July conduct is that there was a report filed. He didn't know what it was filed for. The only information that came out that he was told was that she alleged I broke her phone. Nothing else. Nothing that states that I intentionally broke her phone, took it from her, threw it on the ground. No facts. And I want to make clear that the July 3rd report, the officer did not have it or access to it from any source, while at the location, immediately before making the arrest. He testified that he may have seen it on his computer. But that fact is disputed because their own records say that that report was not accessible to him. So when he was questioned on that basis, he then pivoted and stated that he viewed an I-card. And as the court well knows, an I-card allows an officer to arrest anyone because there's already probable cause. So when he was questioned on his deposition, he mentioned that one of the basis for the arrest was this I-card that he was aware of. The fact is, from his interrogatory responses and through discovery, no I-card existed. They weren't able to produce one and they cannot produce one. So the court stated that that's a disputed fact, but it's not. There just is no I-card. This was just another explanation he came up with during his deposition to explain what were the facts that he relied on to make the arrest. Okay. So we'll hear from Ms. Lerner and then we'll hear from you on rebuttal, Mr. Chanty, okay? Sure, Your Honor. Good morning, Your Honors. May it please the Court. Jennifer Lerner on behalf of Appellees. You can lower that, you can lower that. Yeah, I was debating if I should, I should, but it sounds like I should. Okay. Thank you. This Court should affirm the District Court's grants of summary judgment to defendant police officers on qualified immunity grounds. The District Court correctly determined that there was at least arguable probable cause for the arrest and prosecution of Mr. Gianti based on the information the officers had regarding the July 2018 domestic incident involving the mother. It says that the officers never saw this July report. So I think that, that is, it is undisputed that, that Officer Park looked at the complaint on his phone. That, he testified to that clearly. I don't think there's any evidence in the record suggesting he didn't look at it. Is that in the 56A statement? So that we have an admit or deny? I'd have to check that to be certain. I'm sorry, I can't give you the record offhand. I believe, I believe it is because there is no dispute. The disputed fact is whether he looked at the full details, whether he looked and saw a complaint that said criminal mischief, or saw the full detail and the full domestic incident report. But even assuming he didn't review the full report, he also talked to the complainant. He talked to the victim who explained that in July 2018, there was an incident where he broke her phone. She made a complaint and signed that complaint, and that is what he knew from looking at his phone. To the extent that there are, he could not recall at his, Officer Park could not recall at his deposition, four and a half years later, the exact details of what he told her, that does not vitiate the arguable probable cause that he had at the time of the arrest. Given the record here, where it was clear that there was a complaint made that she signed, there was a determination that criminal activity had occurred, both criminal mischief and harassment, and that the complaining victim specifically told Officer Park about that. That is enough to have arguable probable cause. Even if there are some doubts here, the test is very straightforward, and it is a very light burden intentionally because of the on-the-spot decisions that police officers must make when a crime is being reported. And the fact that the alleged aggressor claims a different version is insufficient reason to doubt the victim's veracity. The officers were entitled to rely on the putative victim as standard statements, and that is sufficient to allow for there to be arguable probable cause here. There's also when, just to briefly touch on the malicious prosecution, when he got back to the station after the arrest, there's no question that he fully reviewed the complaint there. There's some, I mean, that includes the domestic incident report. So at that point, to the extent there was any question, Mr. Giante claims it was undermined by the alleged victim's arguable change in story. That is incorrect. She, her statements were completely consistent with her earlier statements. There was no reason she needed to fully expand, expound upon everything she had previously said, and so he was able to review that, and that was sufficient. So he says that he was arrested because of a, for an open I-card. So he mentioned that, Mr. Giante mentioned that. There was not an open I-card. That's not in dispute. I think in his deposition, Officer Park believed, I'll state fairly that there's some portions of his deposition that are unclear where he refers to a complaint, an open complaint, an open I-card, but in, through discovery, there was no I-card produced. So the city is not arguing that he was arrested based on an open I-card. That is, that's not the case. He was arrested based on the complaint and the information that Ms. Sanders provided. For all those reasons, we ask that you affirm if the Court has no further questions. Thank you, Your Honors. Thank you. Mr. Giante, you heard what Ms. Lerner said? Yes, Your Honor. Okay. So you've got a minute of rebuttal. Sure. In the 56 foreign statements, they did make the allegation, and it was disputed, and it was pointed to in the record where that alleged fact that he read the complaint or anything relating to it existed. So, again, he never read any facts, and there's no testimony from Sanders to cooperate or even suggest that she had a conversation about the July complaint. Just the notation in her September DIR. Now, Ms. Lerner says that it's undisputed that he read this complaint. Again, that is controverted in the 56 foreign statements. It's pointed to directly where from his deposition. All his confusion raises a doubt as to what exactly he saw because he definitely testified that as soon as he arrived on the scene, he saw an I-card that justified my arrest, and that was one of the reasons why he arrested me. Thank you. Thank you very much, Mr. Giante. We appreciate it. We're going to reserve a decision, which just means that we're not going to decide. On the bench, we'll decide it after a little bit more deliberation, and you'll get a decision from us with an explanation. Is that fair? Yes, Your Honor. Thank you. Have a good day. Thank you very much.